My name is Josh Hamilton. I'm here on behalf of Mr. Kato Thompson. Your Honors, Mr. Thompson was convicted under the continuing criminal enterprise statute, which essentially criminalizes being a drug kingpin. And as part of the government's proof, it would have to establish sufficiently to the jury that the defendant participated in a series of what I'll call a series of offenses of three and an expansive case that the government put on. It began, I believe, in as early as 2002 and ended roughly before the defendants were arrested, I believe, in 2010. Thus, the goods portion, as many as one-third, as much as one-third, rather, of the government's case in chief concerned events that occurred prior to the period five years before the filing of the statute of limitations. I'm sorry, before the indictment, which would be outside of the statute of limitations. And as the Supreme Court held in Yates, when a general verdict could be based upon a legally inadequate ground, such as a statutory time bar, the verdict must be set aside. And that's precisely the issue that's presented here. There's two important decisions, prior decisions of this Court, that I think guide our inquiry. The first would be United States v. Jerome. And in Jerome, which concerned continuing criminal enterprise, the government put on a different aspect of the statute, but it's very much applicable to this one. As part of the CCE charge, they would have to prove that there was at least five supervisees. And in the Jerome case, they put on quite a number of potential supervisees that the jury was told, these are the people from whom you can select from to find at least five supervisees. However, two of them were ordinary drug purchasers, which are legally cannot be supervisees under the law. And this Court correctly held that the district court erred enough in failing to properly instruct the jury that it could only select from the proper number of people, and the verdict was reversed as a result. That case was essentially relied upon in a case that's even more applicable, which is the Fuchs case. In that case, which addressed a conspiracy, a fairly complicated conspiracy, there was ten overt acts that the government argued to the jury that these are the things you can select from to find an overt act in furtherance of the conspiracy to satisfy that requirement. A lot of those things were time barred by the statute of limitations. And again, just like in this case, no jury instruction was ever put to the jury saying that you must find an overt act in furtherance of the conspiracy was committed within the statutory time limit. That's exactly this case. Okay. So let's back up just a minute. I've got to make sure I understand what points you're trying to make. So your argument is, is the part of the acts, that there were no acts that occurred within the statute of limitations period? Is that your point? Well, I'll say this. I don't know. I thought he was convicted of just a straight-out conspiracy charge. No. That's Mr. Williams. That's Mr. Williams? Mr. Thompson, my client, was convicted of, well, two things. One was engaging in a continuous criminal enterprise, being a drug kingpin. And the second was possession of marijuana. So the government's case-in-chief put on events dating as far back as 2002. And there were quite a few, and they're outlined ad nauseam in the government's briefs. There's a lot of things that the government put on, a huge bulk of which occurred prior to the outside of the statute of limitations. And because the juror was never instructed that they must find at least one of those, what I'll call serious offenses, one of these substantive violations that you must find free of unanimously in order to establish a proper basis for conviction, the juror was never instructed that it had to find at least one of those things that fell within the statute of limitations. And thus, we get right back to the very legal issue that the United States Supreme Court discussed in D. Gates' case, which is to say when a general verdict could possibly rest upon a legally inadequate basis, such as a statutory time bar, the verdict cannot stand. And that's exactly the situation. The government, in fact, in its closing arguments, gave the jurors four specific things. They said, well, there's much more, but let me give you four that you really want to focus on. Two of those fell outside of the statute of limitations in and of themselves. So the lion's share of this, what I'll call, what I repeatedly refer to as serious offenses, all this evidence fell far outside of the statute of limitations. What was the statute of limitations period? The indictment that alleged C.C. was filed in April of 2011. So the events which occurred prior to April of 2006 would be time bar. So if the jury, if the three serious offenses that the jury was instructed you must unanimously agree upon occurred prior to 2006, April 2006, the verdict cannot stand. It's illegally, it would, he would be acquitted at that point. But in this case, we don't know, we don't, the jury was never instructed whatsoever. The record is totally silent. And that's precisely the issue that requires reversal in this case. You're saying that there was evidence of acts and furtherance of the conspiracy within the five years and there was evidence of acts of the conspiracy before the five years and the judge did not tell the jury they had a fine within the five years. Exactly. That's your argument. Well, no. In the Fuchs case, in which the government put on, I believe, ten overt acts and furtherance of the conspiracy, some of which fell within statute of limitations and some of which fell outside of the statute of limitations. But as this Court held, precisely because the jury was never instructed, as to that very important fundamental legal basis, the verdict was legally inadequate. And it was reversed on that basis. And the result in this case should be no different. Did you ask for that instruction? I didn't represent the defendant at trial. Well, but at trial there was a request by the defendant. He did move several times to dismiss the indictment. You're not answering my question. But did somebody ask? Did the defendant ask for that instruction? No, but the defendant didn't ask for that instruction in the Fuchs case or the Jerome case and in both of those cases where there was essentially some evidence which fell within the statute and some evidence which fell outside of the statute, barred for a legal reason. This Court nonetheless found plain error. The result in this case should be no different. I also will point out the reason I wasn't trying to be evasive. The reason I pointed out the moving to dismiss the indictment on statute of limitations grounds was that that was something that in the Fuchs case this Court found was significant and which it listed as part of its reasons for why it reversed the conviction. So your other point was about his role as a manager or supervisor. Well, in that case it harps back on Jerome, which was cited a lot. I think the bigger issue is with respect to the statute of limitations. There's a statutory time bar. As far as the supervisees, I think it is arguable that some of those people, for instance, there was, I don't want to use an inflammatory term, but one of the women who was an exotic dancer whom the defendant had met in Tucson and which they had alleged was a supervisee because she picked a friend of his up at the airport, and there was another individual who would go and run groceries, things like that. But I think the much bigger issue is the fact that I could count five specific serious violations which were told to the jury, these are the things you can rely upon and these are the things you can select from to form your basis. That wasn't true, and they were never instructed otherwise. I see I have 12 minutes left, so I'm going to turn it over to Mr. Kimball. Thank you. May it please the Court. I'm Philip Kimball. I represent Paul Williams. Your Honor, first addressing Mr. Williams' sentencing issue, I think it's important to note that at the outset everyone agrees that a conviction for a single offense involving an undetermined amount of marijuana is subject to a five-year sentence. It's also undisputed. Five years? Yes, Your Honor, back to the five-year sentence. Let me go into that. The lawyer for Williams at the hearing said the most you can get out of here is 100 to 400 kilograms. Then if the administrator, 400 to 100 kilograms, and I look at 21 United States Codes, maybe it'll change, it'll change. B41E1B7, and I read that 100 kilograms or more of the administrator containing the detectable amount of marijuana, 100 marijuana plants, not less than five years, not more than four years. Where am I wrong? Because the government says that, as I understand it, it's the same thing. You go back and you read the statute, I don't know where that comes from. Where did that match the five-year sentence? From the statute specifying that where there is not a determination as to the weight. And in this case, the jury was – But what if you have a lawyer come up there and say, well, it's at least 100? Your Honor, the argument as to the sentencing was to essentially make the best of what the jury apparently found based on the fact that there was some testimony by one witness. That was Mr. Pacheco, who testified regarding, well, there was the number of transactions and there were no seizures related to those transactions, but those transactions may have amounted to somewhere in the area of 500 kilograms. Now, although there was testimony with regard to that, there was not a request for the jury. There was not a jury finding as to the weight. It was a jury finding, though, that it was less than. The only finding was that it was less than 1,000 kilograms. So why do we assume that it falls within the maximum of five years? Because where there is, as the government has acknowledged, no finding, in other words, no determination as to an amount above zero, then we're talking about an undetermined amount. And where there's an undetermined amount, then the maximum penalty is five years. But if the lawyer walks up and says, you know, under the court order, they didn't do that. Well, Your Honor, I think— I'm looking for the quote now. I thought I had it. Well, I believe Your Honor is referring to what was in the objection to the pre-sentence report. Right. And the objection to the pre-sentence report essentially was addressed to the fact that the pre-sentence officer— I've got it. I've got it here now. There was no evidence that Wood had supported a quantity of marijuana between 700 and 1,000 kilos. Only apparent testimony regarding the weight of marijuana could have been made to this extent. A. C. Pacheco, who testified that he had supplied 500 kilos, though it is not clear that all of that involves Wood. Given this uncertainty, the most credible range, arguably supported by the evidence, presented at trial that apparently believed by the jury it was 100 to 400 kilos. Right. That's the most credible range. It doesn't have to be beyond or—well, it should have been beyond or equal to that. But that's what he said. Why can't you just say, yeah, okay, between 100 and 400 percent? Is it 100 to the maximum? That's it. And, Your Honor, in hindsight, that would have been the correct argument. However, even at that, there is no basis for concluding how the jury reached its determination as to under 1,000 kilos. So you're saying that the mistake here was not asking the jury to just specify an amount that was attributable to Mr. Williams, just X amount of marijuana. We find that X amount of marijuana is attributed to Mr. Williams. Yes, Your Honor. And, in fact, the defense did ask for an interrogatory that would have somewhat more specifically set out determinations of weight. Now, it was a weight of 100 to 1,000, 1,000 and more. What we're talking about here is because it's undetermined, it's assumed to be under 50 kilos. And that's what triggers the maximum of five years. Do we have any case law that says that specifically? That the — In this particular circumstance, that we assume that it's under 50? Well, I think that — We use that range. I mean, there's some — so there's some — there was some marijuana. Well — According to the jury's verdict, it was less than, so it has to be at least one — one — There is some marijuana, because they presumably found the verdict, that says that. The difference here is that, unlike, for example, in Minori and Buckland, which the government refers to to salvage the sentence over five years, there were actual seizures that were attributable to those defendants. There was no objection to the weight in those instances, and there were multiple counts in those cases, all of which would have mandated the greater weight determination. In here, there were no seizures from Williams or attributable to Williams. There was only one count of conviction, and there were objections to the weight determination. Therefore, given that, the fact that there was not a determination by the jury as to an amount other than below one particular threshold, the court has to determine that the threshold amount was — there was no threshold amount that was determined, and that the — this is, as the government characterizes it, an undetermined amount. Where you have an undetermined amount, the court has to determine that the weight at below 50 kilos, which is the starting weight for the statute, is applicable, and that means a sentence of no more than five years. Tell me again, though, why can't the district judge sitting there listening to lawyers, and the lawyer says, Your Honor, it's between 100 and 400. Why can't he believe that? Well, frankly, Your Honor, it is speculation by all of the parties. There were no determination of where this number of under 1,000 came from. Well, I could add up over the hundred based on the record. I don't understand your argument. Why can't we rely on lawyers? Are you telling me that we have to act behind all this? I mean, screw that. Maybe you should, for that reason. But on the other hand, his own lawyer tried to correct him. Why can't we send him back? Well, the number is essentially addressed to the fact that the pre-sentence report had suggested a number between 700 and 1,000 with no particular basis, which was to say, well, they said it was under 1,000. This is the next step below 1,000. Therefore, we're going to take that number. This is some attempt to say, well, even in the best-case scenario, you can't take that because even this one witness testified to amounts that would not have justified that. I guess the bottom line of your argument is that the jury has to make a determination. Yes, Your Honor. Yes, Your Honor. As to the ‑‑ You're almost out of time. If you're going to save the time, the two minutes here are followed by your spoken. All right. I'll defer to Michael. Thank you. Good morning, Your Honors. May it please the Court. Erica McCallum appearing on behalf of the United States here from the District of Arizona. It looks as though we're looking at two of the issues, of the several issues that were raised in this joint appeal. Turning first to Defendant Thompson's CCE claim, primarily something that really needs to be clear and perhaps was not this morning is that the defendant never challenged the statute of limitations below. He did try to dismiss the count from the indictment because he said you have to allege a specific five people and a specific three or more events in the indictment. Now, Ninth Circuit law obviously is clear on that. That's not necessary. And so the indictment correctly was, or the charge was correctly not dismissed. One of the judges here this morning asked, well, didn't the indictment include at least one event which was within the statute of limitations? And let me clarify. The statute of limitations was not, as defense claims, April 28, 2011. It was 2010 because the statute runs from the first indictment, not the second superseding indictment. In any case, the defendant was convicted of conspiracy and also a specific possession with intent to distribute count, which fell, which was from November of 08. So that count fell within the statute of limitations. And that, because it was a conviction, of course it was a unanimous jury finding that that was one of the three events that were part of the continuing series. In addition to that ---- Kennedy. So as I understand it, you don't have to allege in the indictment a specific series of events that were part of the series of events. You do not. Yes, that's correct. Under the case here ---- So as it played out here, he was convicted of a conspiracy. He was convicted of a conspiracy charge and a possession with intent to distribute charge, as well as the continuing criminal enterprise charge. The elements of the continuing criminal enterprise were also ---- Yes. So both of the ---- it's the government's position that both of those convictions, conspiracy and the possession, the distribution charge, fell within the statute of limitations and satisfy that. But the Sterling case says you only have to allege one that falls within. Yes, you only have to allege one that falls within the statute of limitations. In addition, the statute of limitations is an affirmative defense that may be waived, and the defendant never raised it below, never challenged it. And so it's the government's position that that was waived. And ---- We can't review it at all. I would say that's correct. If it's waived, it's forfeiture versus waiver? It's waiver. If it's forfeiture and air, we review it. If it's waived and air, we don't review it. Because it's an affirmative defense, I believe it may be forfeited. And I'm looking ---- It may be waived. I'm sorry, Your Honor. This is one that gets me every time. It's one that's barred if it's not raised below. And we're looking at the Fuchs case, Judge Graber's dissent, and also the U.S. Supreme Court in Smith v. U.S. And because this was raised in the reply brief, I did not have an opportunity to respond to it. So there is a U.S. Supreme Court case, Smith v. U.S., in its U.S. Supreme Court, 133 S.C.T. 714, just to be clear on the record. Defense relies heavily on the Fuchs case and says that this is the situation that we have here. But the difference is, in the Fuchs case, the indictment, it was a conspiracy case, and the indictment alleged a whole series of events. And it was impossible to tell without a specific finding by the jury which events formed the basis for the continuing criminal enterprise count. That's not the case here because we have those two convictions of charged offenses. So there's just no confusion about at least two of them. And you only have to have one. In the Fuchs case, the defendant had tried below to dismiss based on statute of limitations. That's not the case here. And also in the Fuchs case, the evidence was not overwhelming. And, in fact, the Court found that the strongest evidence was in the counts that fell outside the statute of limitations. Here, the evidence primarily fell within the statute and was overwhelming. So, again, that's different. Unless the Court has any further questions on that issue, I would turn to the sentencing question. And just to clarify, the government actually raised this issue in its answering brief defense, never really raised it below or on appeal. But we felt that it was fair to lay out the correct law here. And it's the government's ---- Is there also something that could be waived if the defendant doesn't raise it? Well, it's not necessarily that it's waived, but that the defendant has the burden to prove that his substantial rights were affected. And they weren't, obviously, because all the way up below, he was saying this is more than 100 kilograms. And also, he has to ---- Well, he didn't raise it. Did he raise it in his ruling? I'm sorry? Did he raise his sentencing, his appropriate sentencing here in his ruling? No. He raised it in his ---- Well, he responded to me raising it in his reply. Okay. So one question is, is it waived by not raising it in his ruling? I believe, yes. Thank you for clarifying that. Yes, I think the Court could find that. Unless the Court were to say, well, this is strictly a matter of law. So ---- Well, on the other hand, the government said, look, there's a problem here. There's a potential problem here. We acknowledge it, but it's really not a problem. Yes. And the reason it's not a problem is because he didn't demonstrate that it affected his substantial rights because evidence was overwhelming that this was more than 50 kilograms. And the key I'm trying to get to here, because there seems to be a bit of confusion, is ---- Wait a minute. Your position then is it should be reviewed in plain error? Yes. If it is reviewed, it should be reviewed in plain error. And there's two ---- there's two prongs of plain error where it fails. Number one is substantial rights. Number two is the fairness to the judicial proceeding. And that's because if you look at the Cotton case, it talks about how it's ---- it would be unfair to have a proceeding where there's an abundance of evidence establishing a large weight of a drug and then sentence the defendant under 841B1D, which is the five-year cap that you're asking about, Judge Quist. And the way that works is if there's a trial and there's no weight finding whatsoever, then the default is to go back to the lowest statutory cap. This is under Apprendi. And that would be B1D, maximum five years, for any weight below 50 kilograms. Now, here, there's absolutely no dispute that the weight was at least 100 kilograms. The defense at trial said 266 kilograms. At sentencing said 100 to 400 kilograms. No one ever said this is less than 50 kilograms. And in fact ---- The jury had been asked, which your point is that the jury had been asked, the jury was not responsible for this. The jury was ---- The verdict ---- They would have said yes? Oh, would they? Yes. Yes. It's beyond a reasonable doubt they would have said more than 50 kilograms. The verdict form, which we believe had a typographical error, said make a finding of 1,000 kilograms or greater or less than 1,000 kilograms. Now, the defendant had submitted a proposed verdict form that include 100 kilograms or more or 1,000 kilograms or more. That 100 was not put on the final verdict form. The defendant reviewed the form, blessed it, and his only objection was you should specify in this form that there has to be a finding that the weight is without the wrapping. Did the government review the form? Yes. Don't think it's on the defendant. Well, the defendant didn't object to it is where I'm going. No. The government also didn't see it, and the court didn't see it. And so that was the verdict form that was used. But I can, and I'll admit this. What do you think the effect would be if a lawyer's statement was 100 kilograms? What is the effect of that as far as marking what it has to cover? How much would it affect the defendant? Do you think? Do you? 60 pounds? 60 pounds? Or 100 kilograms? Any effect at all? I think what it does is it throws it, because it's undisputed that it's at least 100 kilograms, it takes it out of that 60-month maximum, and it, at a minimum, moves it up to B1c, which is a zero to 20-year range. And the defendant was sentenced to 121 months. So he was within that, the next, between 50 and 100 kilograms range, essentially. The statutory range. It is a factor? It's a factor, but it's outweighed by the fact the defendant didn't meet his burden to show plain error on two prongs. And I did, if I have a moment left, I did want to clarify. I do. That this was a lengthy brief, and I actually had to shorten it, and so it's not entirely clear what, the defendant said there were no seizures from Williams. But I'd just like to briefly run through the transactions that Williams was involved in that there was evidence on. 2008, he received delivery of 135 pounds of marijuana. July of 2009, he received delivery of 250 pounds of marijuana. August of 2009, he and his co-defendant, Thompson, loaded four bundles of marijuana into a car and drove it across Tucson. September of 2009, defendant loaded five bundles into a truck that was taken to Florida. And November of 2009, he loaded five bundles in another truck that went to Florida. So there's abundant evidence that there are, The amount is, definitely exceeds 50 kilograms, and also 100 kilograms. I'm looking at my notes. I don't really have anything else that I wanted to bring up on this issue. Did the court have any other issues? No. All right. Then I submit on the briefs and ask you to adjourn. Thank you. Okay, thank you. First, the defendant was never charged. I don't think this matters. He was never charged with continuing criminal enterprise until the second superseding indictment, April 2011. So I believe that's when the period would run. I don't think that makes any difference. The government said that this issue was never brought up. I'm holding here a blue brief on page 20. It specifically brings up this issue and cites fugues in all the other cases, so that's incorrect. Excuse me? This issue, are you talking about the number of statute of limitations for conspirators? Statute of limitations being, well, the number of serious violations being time-barred by the statute of limitations. That was brought up. No, it wasn't that it wasn't brought up here. It was in your blue brief. Her point, as I understood it, was that it wasn't brought up in the district. Well, she said it was only argued in my reply brief, and I'm just pointing out that was not true. Did you raise it at the district court, then? I think it was – I believe it was – the indictment was challenged for a whole number of things. One of those things was the statute of limitations issue. Again, I don't – Can I go back and look at the motion? There was a motion to dismiss the indictment on this ground? I believe so. I don't have the record in front of me, but I believe so. It was a – Well, I'll check. I believe I'm correct about that. Okay. Nonetheless, it makes no difference because just as the jury in Jerome could have found the defendant guilty based upon individuals who were improperly accounted in the number of people who were supervised or managed by the defendant, the jury in this – just like in Fuchs could have found the defendant guilty based upon acts that were improperly included in the CCE case because they were barred by the statute of limitations. And just as this court held in Fuchs, the district court's failure was highly prejudicial, was plain and required reversal. That's exactly this situation. So if I could really sum it up into one sentence, it's that – it's this. When a jury reaches a verdict that could be premised upon a legally invalid ground, such as a statutory time bar, the verdict cannot stand. In this case, we can't determine the guilty verdict's basis because the jury was never properly instructed. Nothing that the government could argue could change that fact. So I'd ask the court to reverse the conviction. For that reason, I believe there's no other remedy short of that. Thank you. Thank you, counsel. The matter is submitted at this time. Appreciate your argument.
judges: Quist, Tashima, Paez